**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **SYBIL ANGELA BYNUM-WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:23-cv-265 (MTT)** |
| | ) | |
| **CHRISTOPHER SCUDERI,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>ORDER</u>

M. Devlin Cooper, Kenneth E. Barton III, and Cooper, Barton & Cooper, LLP (collectively, "Former Counsel") request that the Court enter an order recognizing the existence of an attorney-client relationship between Plaintiff Sybil Angela Bynum-Williams and Former Counsel and to satisfy Former Counsel's attorney's lien. Doc. 46. For the reasons that follow, Former Counsel's motion (Doc. 46) is **GRANTED**.

### I. BACKGROUND

On or about March 23, 2023, the Plaintiff retained Former Counsel to represent her in the present action and in a criminal defense case pending in Houston County, Georgia. Docs. 46 ¶ 3; 51 at 1. The Plaintiff paid Former Counsel a $5,000 retainer for representation in the Houston County criminal case. Docs. 51 at 1; 42-4. Former Counsel maintains that around the same time, Plaintiff and Former Counsel signed and executed a written agreement providing for a thirty-five percent contingency fee in the present action. Doc. 41 at 1-2. However, Former Counsel cannot locate the purported written agreement. *Id*. The Plaintiff maintains that Former Counsel "never provide[d] a written contingency fee agreement and contract to sign." Doc. 51 at 2.

In June 2024, the parties participated in a successful mediation with former Superior Court Judge Lamar Sizemore and drafted a written settlement agreement. Doc. 19-1 at 3.  The settlement agreement was signed by the Plaintiff, Former Counsel, Defendant's counsel, and Judge Sizemore.  Docs. 19-1 at 3; 19 at 4.  In September 2024, the Defendant filed a Notice of Settlement.  Doc. 15.  Shortly thereafter, the Plaintiff informed Former Counsel by email that she would not honor the settlement agreement and intended to proceed to trial.  Docs. 46 ¶ 11; 46-1 at 2.  Former Counsel responded to Plaintiff's email stating that the settlement agreement was enforceable and explaining the net amount Plaintiff could expect to receive after paying Former Counsel and satisfying any outstanding Medicare lien.  *Id*.  Former Counsel advised the Plaintiff that any motion by the Defendant to enforce the settlement agreement would likely be granted, and in that event Former Counsel would "likely become witnesses" and "be unable to represent [Plaintiff] in that proceeding."  Doc. 46-1 at 2.  Former Counsel further cautioned the Plaintiff that she would be required to pay the Defendant's attorney fees in bringing any motion to enforce.  *Id*. at 5.  The Plaintiff responded that she understood Former Counsel was intending to "stack [his] deck" and she would not "tolerate [Former Counsel's] overbearing intimidation."  *Id*. at 13.   The Plaintiff remained adamant that she would "not sign the Release and Closure Document under any circumstances."  *Id*.

Former Counsel informed the Defendant that the Plaintiff was refusing to settle her claim and that Former Counsel would be moving to withdraw from representation. Doc. 19 at 2.  The Defendant moved to enforce the settlement agreement and to award attorney fees as a sanction.  Doc. 19.  Former Counsel successfully moved to withdraw

on November 12, 2024 (Docs. 16; 22), and the Court granted the Defendant's motion to enforce the settlement and denied the motion for attorney fees.  Doc. 29.  The Plaintiff and Former Counsel agree that the attorney-client relationship ended when the Court granted Former Counsel's motion to withdraw.  Docs. 42 at 2; 46 ¶ 11; 51 at 2.

## II. DISCUSSION

"An attorney-client relationship may be created expressly by written contract or inferred from the parties' conduct."  *Mays v. Askin*, 262 Ga. App. 417, 419, 585 S.E.2d 735, 737 (2003) (citing *Huddleston v. State*, 259 Ga. 45, 46, 376 S.E.2d 683 (1989)). When assessing whether an attorney-client relationship exists, several factors are considered, but the fundamental question is whether the would-be client reasonably believed they were represented by the attorney.  *Id*.  Here, the Plaintiff does not dispute the existence of an attorney-client relationship, and it is clear that in the absence of a written agreement, the Plaintiff reasonably believed she was represented by Former Counsel until the Court granted the motion to withdraw.  *See* Doc. 51 at 1 ("Claimant hires representation at Cooper Barton & Cooper LLP"); 2 ("By November, 2024, ATTORNEYS TERMINATED.").

Former Counsel now moves to enforce a lien for attorney fees and costs.  Doc. 46 at 1.  O.C.G.A. § 15-19-14(b) governs attorney's liens and states:

> Upon actions, judgments, and decrees for money, attorneys at law shall have a lien superior to all liens except tax liens; and no person shall be at liberty to satisfy such an action, judgment, or decree until the lien or claim of the attorney for his fees is fully satisfied. Attorneys at law shall have the same right and power over the actions, judgments, and decrees to enforce their liens as their clients had or may have for the amount due thereon to them.

"This special, or charging, lien is the equitable right of an attorney to recover his fees and costs due him for his services, and may be satisfied out of the judgment obtained by his professional services."  *Howe & Assocs., P.C. v. Daniels*, 274 Ga. App. 312, 314, 618 S.E.2d 42 (2005) (citation omitted).  "While the statute safeguards an attorney's right to a fee which has been earned, it does not control how the amount of the fee is determined."  *Greer, Klosik & Daugherty v. Yetman*, 269 Ga. 271, 274, 496 S.E.2d 693 (1998).  "The validity and enforceability of an attorney's lien, and the amount of fees to award the attorney enforcing the lien, are matters for the trial court to decide." *McDonald & Cody v. State*, 364 Ga. App. 457, 461, 875 S.E.2d 430 (2022) (citing *Tolson v. Sistrunk*, 332 Ga. App. 324, 325, 772 S.E.2d 416 (2015)).

"An attorney's lien under O.C.G.A. § 15-19-14(b) is based on 'the fruits of the labor and skill of the attorney' exerted on behalf of the client[.]"  *Tolson*, 332 Ga. App. at 332 (citation omitted).  "Where there is a contingent fee arrangement between a client and his attorney and the client prevents the contingency from happening, the attorney is entitled to reasonable attorney's fees for his services that have been rendered on behalf of the client."  *Sosebee v. McCrimmon*, 228 Ga. App. 705, 707, 492 S.E.2d 584 (1997) (internal quotations and citation omitted).  "This principle also applies when the client, by his or her conduct, gives the attorney reasonable cause to withdraw."  *Id*.  "Thus, although prevented from recovering under the contract, the attorney still has a remedy in quantum meruit."  *See Sutherland v. Hammers*, 375 Ga. App. 439, 443, 916 S.E.2d 493 (2025) (citing *Ellerin & Assocs. v. Brawley*, 263 Ga. App. 860, 861-62, 589 S.E.2d 626 (2003)).

Here, Former Counsel cannot recover under any written contract both because there is insufficient evidence to determine the existence of a written contingency fee agreement[1] and because the Plaintiff gave Former Counsel reasonable cause to withdraw, as discussed below. And Former Counsel does not seek to recover under any contingency fee agreement or contract percentage.[2] Doc. 46 ¶ 15. *See Sosebee*, 228 Ga. App. at 707 ("A quantum meruit claim requires proof as to the reasonable value of the attorney's services rendered in behalf of the client. It is error to rely blindly upon the contingency fee contract percentage in fixing this amount.") (citations omitted).

The record reflects that by the time Former Counsel filed a motion to withdraw from representation, communication between the Plaintiff and Former Counsel had broken down and the Plaintiff no longer trusted Former Counsel. Doc. 46-1 at 13 ("It appears you intend to stack your deck with Angela, Raymond, and Judge Sizemore. I will not sign the Release and Closure Document under any circumstances."); 14 ("I find this matter to be very, very deceptive."). Former Counsel appropriately advised the Plaintiff that the settlement agreement she signed was enforceable and specifically counseled the Plaintiff on her legal and financial exposure should she refuse to honor the settlement agreement. *Id*. at 13-15. Former Counsel explained that the firm would no longer be able to represent her if she refused to honor the settlement. *Id*. Despite

---

[1] Standard 31(d)(1) of the Standards of Conduct for the State Bar of Georgia provides that contingency fee agreements shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, whether litigation and other expenses are to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. *See Nelson & Hill, P.A. v. Wood,* 245 Ga. App. 60, 66, 537 S.E.2d 670 (2000).

[2] Former Counsel initially requested the Court find Former Counsel is entitled to "reasonable hourly fees" equivalent to 35% of the settlement award plus costs, pursuant to the purported contingency fee agreement. Doc. 41 at 5. In the present motion, Former Counsel abandons that request. Doc. 46 at 5.

these warnings, the Plaintiff insisted that she would not honor the settlement and assumed an adversarial stance. *Id*. It is clear that the attorney-client relationship deteriorated because of the Plaintiff's conduct, and the Plaintiff does not dispute the reasons for Former Counsel's withdrawal. Doc. 51. Thus, Former Counsel's voluntary withdrawal was warranted, and Former Counsel is not precluded from recovering fees on a quantum meruit basis. *See Sutherland,* 375 Ga. App. at 443-45.

"Quantum meruit literally means 'as much as he deserves.' It is an equitable doctrine based on the concept that no one who benefits from the labor and materials of another should be unjustly enriched thereby." *Ellerin & Assocs.,* 263 Ga. App. at 863 (citing *Nelson & Hill*, 245 Ga. App. at 62-63). "'Under a quantum meruit claim, an attorney is entitled to have his fees valued both in light of the amount of work he has done, and also by the results accomplished. Accordingly, the trial court must determine whether [the client] received any benefit from [the attorney's] services, and if so, the value of those services rendered and received.'" *Sutherland*, 375 Ga. App. at 446 (citing *Lewis v. Smith*, 274 Ga. App. 528, 531-32, 618 S.E.2d 32 (2005)) (alterations in original). In other words, the attorney may recover the reasonable value of goods or services transferred, but value is defined in terms of value to the client. *Id*.

To demonstrate the reasonable value of legal services rendered, Former Counsel submitted an affidavit with time sheets and invoices for all services rendered to the Plaintiff up to and including the mediation.[3] Docs. 41-1; 46-3. Former Counsel

---

[3] Due to an apparent copying issue, Doc. 46-3 is less legible than Doc. 41-1, particularly for Former Counsel's time entry descriptions in the Practice Panther invoice. Thus, the Court cites both documents, which are identical except for the text's legibility.

made a Declaration of Custodian and certified that the invoices are true and correct copies of business records that:

    a. were made at or near the time of occurrence of the matters, set forth by, or from information transmitted by, a person with knowledge of such matters and a duty to report;
    b. were kept in the course of regularly conducted activity; and
    c. were made by the regularly conducted activity as a regular practice.

Docs. 41-1 ¶ 13; 46-3 ¶ 13.  The Court concludes that Former Counsel has laid a proper foundation for application of the business records hearsay exception and that the circumstances of the documents' preparation indicate trustworthiness.

Former Counsel requests the following as reasonable hourly rates for four attorneys who worked on Plaintiff's case: $300 and $350 for Mr. Cooper; $275 and $300 for Mr. Barton; $175 and $200 for Ms. Rogers; and $200 and $250 for Mr. Stanage.[4] Docs. 41-1 ¶¶ 8-11; 46-3 ¶¶ 8-11.  Former Counsel requests $125 as a reasonable hourly rate for one paralegal who worked on the case.  Docs. 41-1 ¶ 12; 46-3 ¶ 12.  "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  Here, Former Counsel affirmed that all rates are "reasonable in the Middle Georgia legal market" and "set by the partners in the firm in consideration of the prevailing rates of similarly experienced counsel and staff members at other firms in the market."  Docs. 41-1 ¶¶ 5, 8-11; 46-3 ¶¶ 5, 8-11.  Based on the evidence and the

---

[4] According to Former Counsel's affidavit, each attorney's hourly rates have increased by $25 or $50 since Plaintiff's lawsuit was filed.  Docs. 41-1 ¶¶ 8-11; 46-3 ¶¶ 8-11.

Court's knowledge and experience of reasonable hourly rates in the relevant area, the Court finds that the fees Former Counsel incurred were reasonable.

Between the four attorneys and one paralegal, Former Counsel billed 156.60 hours for Plaintiff's case up to and including the mediation.  Docs. 41-1; 46-3.  Former Counsel affirmed that "[a]ll services rendered and work performed was reasonable and necessary to reach the settlement that was negotiated at the mediation of this case."  Docs. 41-1 ¶ 6; 46-3 ¶ 6.  Former Counsel does not seek attorney fees for any services rendered after the mediation.  The Court has conducted a detailed examination of Former Counsel's time sheets and invoices and is satisfied that all services presented to the Court provided value to the Plaintiff.  According to the time sheets and invoices, the value of Former Counsel's services at reasonable hourly rates was $36,548.70.  Docs. 41-1 at 6, 25; 46-3 at 6, 25.

The invoices show $874.10 in expenses incurred for Plaintiff's representation.  Docs. 41-1 at 26-27; 46-3 at 26-27.  However, this amount includes expenses incurred after the mediation.  *Id*.  The Court finds that expenses incurred after the mediation provided no value to Plaintiff and thus determines, based on the invoices, that Former Counsel can recover $297.50 in costs.  Altogether, Former Counsel is entitled to $36,846.20 in attorney fees and costs.[5]

The Plaintiff does not dispute the value and benefit of the services Former Counsel rendered to her.  Doc. 51.  Rather, the Plaintiff simply contends that there was no written fee agreement signed, and thus, "[a]ttorneys knew or should have known

---

[5] Former Counsel affirmed that attorney fees and expenses in Plaintiff's representation total $36,546.00.  Docs. 41-1 ¶ 4; 46-3 ¶ 4.  Former Counsel does not explain how this figure was determined, and the Court cannot tell based on the invoices.  Thus, this figure is disregarded.

their lien could not be verified." *Id*. at 2.  As discussed, the absence of a written fee agreement does not preclude an attorney-client relationship or recovery in quantum meruit.  And "'where the services of the attorney, the reasonable dollar amount for attorney fees, and the value to the client are not in dispute of fact in quantum meruit, the trial court can decide the award of attorney fees as a matter of law without trial by jury, because there is no disputed issue of material fact for a jury to decide.'"  *Sosebee*, 228 Ga. App. at 707 (citing *Yetman v. Greer*, 225 Ga. App. 397, 400, 483 S.E.2d 878 (1997)).

The Court finds that Former Counsel is entitled to recover attorney fees and costs in quantum meruit, and Former Counsel's motion for the Court to recognize the existence of an attorney-client relationship and satisfy Former Counsel's lien (Doc. 46) is **GRANTED**.  Former Counsel is awarded attorney fees and costs in the total amount of $36,846.20.

**SO ORDERED**, this 9th day of September, 2025.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT